[Cite as *State v. Garrad*, 2020-Ohio-3652.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J. |
| | Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 2019 CA 0102 |
| SHAWN GARRAD | |
| | |
| Defendant-Appellant | O P I N IO N |

CHARACTER OF PROCEEDINGS:    Appeal from the Richland County Court of
Common Pleas, Case No. 2018-CR-
0743R

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    July 6, 2020

APPEARANCES:

For Plaintiff-Appellee    For Defendant-Appellant

GARY BISHOP    RANDALL E. FRY
Prosecuting Attorney    10 West Newlon Place
Richland County, Ohio    Mansfield, Ohio 44902

JOSEPH C. SNYDER
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, Ohio  44902

*Hoffman, P.J.*

**{¶1}** Appellant Shawn Garrad appeals the judgment entered by the Richland County Common Pleas Court convicting him of trafficking in heroin (R.C. 2925.03(A)(2)), possession of heroin (R.C. 2925.11(A)), three counts aggravated trafficking in drugs (R.C. 2925.03(A)(2)), two counts aggravated possession of drugs (R.C. 2925.11(A)), improperly handling firearms in a vehicle (R.C. 2923.16(B)), receiving stolen property (R.C. 2913.51(A)) and carrying a concealed weapon (R.C. 2923.12(A)(2)), with firearm and forfeiture specifications, and sentencing him to an aggregate term of incarceration of 26 years.  Appellee is the state of Ohio.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** On March 15, 2018, Appellant and Amanda Higgs came to the home of Robert Wheeler at 5:30 a.m.  Higgs asked Wheeler if he knew how to open a safe, and Wheeler replied he did not.  Higgs made a phone call, then left Wheeler's residence with Appellant.  Higgs and Appellant later returned to Wheeler's home.  The pair had a bag with them, and Appellant appeared nervous.  Appellant pulled a pink handgun from the bag and showed it to Wheeler.  Appellant made a comment to Higgs about giving someone half the money for opening the safe.  Appellant and Higgs then asked Wheeler to take them to the Comfort Inn in Mount Vernon, Ohio.

**{¶3}** When they arrived at the motel, Appellant and Higgs gave Wheeler money to book a room for them, and to buy assorted items at Walmart.  When Wheeler returned from Walmart, Higgs told him they needed to leave because someone had discovered where they were staying.  Wheeler then drove Higgs and Appellant to the Comfort Inn in Bellville, Ohio.

{¶4} The assistant manager was working the desk at the Quality and Comfort Inn in Bellville when Wheeler arrived. Wheeler appeared to be very nervous. He asked the assistant manager if there were any smoking rooms available. The motel only had nonsmoking rooms. Wheeler told the manager he would be right back, and left the lobby. When Wheeler returned to the front desk, he booked a room, paying in cash.

{¶5} Wheeler drove around the back of the motel where he helped Appellant and Higgs move their things into the room, including a large box. Wheeler then left the motel to return home to get ready for work.

{¶6} About thirty minutes later, the assistant manager of the motel received a complaint of smoke coming from the room booked by Wheeler. Officer Thomas Queen of the Bellville Police Department arrived on the scene to assist, and the assistant manager went to the room. She knocked on the door and heard male and female voices inside the room, followed by a toilet flushing. Higgs opened the door part way, and the assistant manager told Higgs she would have to leave the motel for violating the nonsmoking policy. Higgs claimed she was the only person in the room. Higgs and Appellant contacted Wheeler to come back because they were kicked out of the room. After the room was vacant, the assistant manager found a line of white powder, bloody tissues, and evidence of a smoking cigarette in the room.

{¶7} When Wheeler returned to the motel, Appellant yelled from across the street that Higgs would meet him by the back door. Wheeler and Higgs loaded the truck with the items previously moved into the room, including the large box.

{¶8} As Wheeler and Higgs left the motel, Wheeler's truck was stopped by Officer Queen. Upon search of the car, police found $11,898 in cash, a pink Ruger firearm

later determined to have been stolen, 53.84 grams of a fentanyl and heroin mixture, 79.91 grams of methamphetamine, 138.91 grams of heroin, and 7.87 grams of Suboxone. Police also found a notebook with "Shawn's Book" written on the outside and a notebook with "Dealz on Wheelz" written on the outside. Both notebooks appeared to be ledgers of drug sales. Police also found a notepad from the Comfort Inn with the email address "ShawnGarrad90@gmail.com" written on it.

{¶9}     Several months later, Appellant began sending notes to the Bellville Police Department from the Delaware County Jail.   The notes, written on scrap paper, were largely unintelligible.  However, over time the notes became cohesive enough for police to understand Appellant was trying to provide them with information relating to Higgs's and Wheeler's cases.  Appellant expressed his desire to go into protective custody in exchange for making a statement to police.  In one letter Appellant wrote, "I hold all details.  I'm the one who did this one 100 percent, not falsifying.  Shawn M. Garrad am guilty of this and can help put dope possession and 15-year friendship dealers want back." Tr. 201.

{¶10} When police interviewed Appellant, he asked to be transferred to the Richland County Jail in exchange for information.  Appellant told police he stole the drugs and money from a business called Dealz on Wheelz in Westerville, which was a front for drug trafficking.  He confessed to using Wheeler to transport the drugs into Bellville, and admitted he watched the stop of Wheeler's vehicle by Officer Queen from across the street.  Appellant admitted to using drugs at the motel in Bellville with Higgs, and admitted to knowledge of the drugs, gun, and money found in Wheeler's truck.  Appellant told police the people in Westerville knew he and Higgs had stolen the items, and were headed to

Mount Vernon to look for them, which is why they left Mount Vernon for Bellville.  At Higgs's trial in November, 2018, Appellant testified he stole a safe containing drugs and money from a business called Dealz on Wheelz, and he took it to a man named Eric Thompson, who opened it for him.

{¶11} Appellant was indicted by the Richland County Grand Jury on August 23, 2018, with trafficking in heroin, possession of heroin, three counts aggravated trafficking in drugs, two counts aggravated possession of drugs, improper handling of a firearm in a motor vehicle, receiving stolen property, and carrying a concealed weapon, with accompanying firearm and forfeiture specifications.  Following jury trial in the Richland County Common Pleas Court, Appellant was convicted on all counts.  The forfeiture and firearm specifications were merged.  The possession convictions were merged into the trafficking convictions, with the State electing sentencing on the trafficking convictions. The carrying a concealed weapon conviction was merged into the improper handling of a firearm in a motor vehicle conviction, with the State electing sentencing on improper handling of a firearm in a motor vehicle.  Appellant was sentenced to eleven years mandatory incarceration for aggravated trafficking in heroin; eight years, 36 months, and 6 months for the three individual counts of aggravated trafficking in drugs; 12 months for improper handling of a firearm in a motor vehicle; and eighteen months for receiving stolen property.  He was sentenced to one year incarceration on the firearm specification. All sentences were to be served consecutively, for an aggregate term of 26 years incarceration.

{¶12} It is from the October 3, 2019, judgment of conviction and sentence Appellant prosecutes this appeal, assigning as error:

THE TRIAL COURT SENTENCE OF CONSECUTIVE SENTENCES

IS CONTRARY TO LAW AND IS NOT SUPPORTED IN THE RECORD.

**{¶13}** In his assignment of error, Appellant argues consecutive sentences are not supported by the record. He concedes the court made the findings required by R.C. 2929.14(C)(4) to impose consecutive sentences, but argues the court's findings are unsupported by the record.

**{¶14}** R.C. 2929.14(C)(4) provides:

(C)(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single

prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶15} Our standard of review of sentencing is set forth in R.C. 2953.08(G)(2):

The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a)That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

**{¶16}** In the sentencing entry, the trial court found consecutive sentences were necessary to protect the public from future crime or to punish Appellant, consecutive sentences are not disproportionate to the seriousness of Appellant's conduct and to the danger Appellant poses to the public, at least two of the multiple offenses were committed as part of one or more courses of conduct and the harm caused was so great or unusual that no single prison term for any of the offenses committed as part of the course of conduct adequately reflects the seriousness of Appellant's conduct, and Appellant's history of criminal conduct demonstrates consecutive sentences are necessary to protect the public from future crime by Appellant.

**{¶17}** During sentencing, the trial court made the same findings on the record concerning consecutive sentencing, and also elaborated on the court's view of Appellant's conduct underlying the convictions:

Serious factors, more or less serious. I think the more serious factors, obviously, this crime happened because it was part of an organized criminal activity, which would be drug trafficking. There was a drug trafficking front, an enterprise in Westerville, Ohio, Garrad was working for. That business was designed to look like it was selling cars. In reality, it was trafficking drugs. There might have been some cars being sold or cars being repaired or worked on, but, again, that was just a front for the real business, which was the drug trafficking enterprise.

It's clear Mr. Garrad decided that he would rob the drug dealer he was working for, and then it's clear that he intended to traffic those drugs to

make additional money in addition to the amount of money that he received when the safe was opened in Mount Vernon. Obviously, the drug dealing – we talked about this – the impact that it has on the community, it increases drug overdose deaths, increases crime, increases addiction, and, also, it increases the risk of violence, because, obviously, the people who were running the business – and I'm sure Mr. Garrad was concerned, and he should have been, with his safety, because I believe that those individuals probably were attempting to find him, locate him, and cause harm to him or his family or to Amanda or to Robert Wheeler, who was kind of the dupe that was in all this. The problem with that, if they find him at a McDonald's or Burger King, I don't think they will wait until they're in a private place. I think they were going to go after him no matter where they found him, and that's dangerous to everybody, not just Mr. Garrad or Amanda Higgs, when you're robbing that amount of drugs and that amount of cash and a gun from a drug dealer.

{¶18} Tr. 471-72.

{¶19} The judge further noted while Appellant initially cooperated with law enforcement, it was clear he committed perjury at Higgs's trial because his statements were inconsistent with what he previously told police, which the court believed was Appellant's attempt to keep Higgs from taking the consequences of their crimes. The court was troubled Appellant was not honest testifying under oath. The court further took note Appellant was in prison for a separate offense of fleeing and eluding in Delaware

County, and was in prison. Appellant committed ten felonies in the instant case and one in Delaware, for a total of eleven felony convictions

{¶20} The court also stated on the record:

This was an incredibly large amount of drugs, cash, and a loaded firearm, all stolen with the intent to profit from it. It was transported through multiple jurisdictions; taken from Westerville, which is Franklin County or Delaware County, brought into Knox County, and ultimately brought into Richland County. So, again, the largest amount of drugs that the Bellville Police Department has ever seen, past and current, so it was a huge amount of drugs.

Also, the prosecutor pointed out if you believe what Amanda and Shawn say, probably it was double. The amount we recovered was probably double because it was – half was – to get the safe open, half was given to a drug dealer in Mount Vernon.

{¶21} Tr. 474.

{¶22} Appellant argues he only had one prior felony conviction outside of the ten felonies committed in this case. He argues there is no evidence presented he was involved in drug sales in Westerville, and no evidence in this case he sold drugs or received money for drugs. He argues this was a single incident in which no one was hurt and was not a course of conduct, and there is no evidence the Delaware conviction was drug-related. He also argues he cooperated with police and testified in Higgs's trial.

**{¶23}** We note while Appellant argues there is no evidence he was involved in trafficking in drugs, he does not raise error claiming the convictions of aggravated trafficking in drugs were against the manifest weight of the evidence or unsupported by sufficient evidence. The evidence at trial demonstrated Appellant and Higgs were living at Dealz on Wheelz, a business which by Appellant's admission served as a front for drug trafficking. Among the property recovered from Wheeler's truck was a notebook labeled "Shawn's Book" which appeared to be a ledger of drug sales. While there was no direct evidence anyone was hurt by Appellant's conduct, the evidence demonstrates Appellant transported a large quantity of drugs and a weapon from Westerville to Mount Vernon and ultimately to Richland County. The fact the drugs were intercepted before being sold on the street does not render Appellant's conduct harmless. Further, there was evidence half of the drugs and money which were originally in the safe ended up in the hands of the man who opened the safe for Appellant, and the whereabouts of those drugs are unknown.

**{¶24}** Contra to Appellant's argument, we find the crimes in the instant case were a part of a course of conduct which began with finding someone to open the safe, extended through stealing the items from the safe, and continued with the transportation of the drugs through multiple counties until they were intercepted by police.

**{¶25}** From the State's perspective, Appellant did not take full responsibility for his actions. While he did cooperate in part, he did not come forward in the first instance when he sat across the street from Officer Queen's traffic stop of Wheeler's vehicle and watched from a distance. He did not come forward until he feared retribution from the people he

stole the drugs, money, and gun from, and he became concerned for Higgs's fate. Further, the trial court found Appellant committed perjury in Higgs's trial.

**{¶26}** We find the imposition of consecutive sentences was not contrary to law. We further find the record supports the court's findings under R.C. 2929.14(C)(4).

**{¶27}** The assignment of error is overruled. The judgment of the Richland County Common Pleas Court is affirmed.


By: Hoffman, P.J.

Wise, John, J. and

Wise, Earle, J. concur